JOSEPHINE E. RHODEHOUSE, ADMRX. AD PROS. OF WILLIAM J. RHODEHOUSE, DECEASED, PLAINTIFF, v. DIRECTOR GENERAL OF RAILROADS, DEFENDANT.

Argued June 2, 1920—Decided November 18, 1920.

1. Where the plaintiff's decedent, an intending passenger, was struck and killed on a dark, misty morning by an unscheduled engine operated by the defendant's servants, while crossing its railroad tracks, from the company's station on the northerly side to its station on the southerly side, by a passageway provided and maintained for passengers intending to board the company's trains on either side of the tracks—*Held*, the motion for a nonsuit was properly refused, because there was some testimony tending to show defendant's negligence in the operating and running of the locomotive engine.

2. The motion for a nonsuit upon the ground of plaintiff's decedent's negligence was also rightly refused, as it did not appear conclusively by the testimony on the plaintiff's case that it was the decedent's negligence which caused his injury.

3. It was neither error nor ground for a new trial for plaintiff's counsel to state to the jury the amount of damages sought to be recovered.

4. An award of $25,000 damages is not excessive where it appears that the decedent, forty-one years of age, in good health, industrious and earning $42 a week, with prospects of an increase, left a widow thirty-four years of age and a son and daughter aged thirteen and eleven years respectively.

On defendant's rule to show cause.

Before Justices TRENCHARD, MINTURN and .KALISCH.

For the rule, *Collins & Corbin* (*George S. Hobart* and *Edward A. Markley*), of counsel.

*Contra, Griggs & Harding* (*John W. Harding*), of counsel.

The opinion of the court was delivered by

KALISCH, J.   The plaintiff's decedent was killed on December 26th, 1919, while crossing the tracks of the Erie Railroad Company, at Hohokus station, in Bergen county.   An action by the plaintiff against the defendant to recover damages for negligently causing the death of the decedent resulted in a verdict for $25,000 in favor of the plaintiff.

The legal propriety of this verdict is questioned here under a rule to show cause obtained by the defendant why the verdict should not be set aside.

The reasons presented by the counsel of defendant to that end are as follows:

1. That the trial judge erroneously refused to grant defendant's motions for a nonsuit and a direction of a verdict.

Under this head it is argued in the brief (*a*) that there was no evidence of negligence on part of the railroad company; "(*b*) the plaintiff's intestate as a matter of law was guilty of contributory negligence;" "(*c*) the plaintiff's intestate was a trespasser, or, at most, a mere licensee, and recovery is barred by virtue of the provisions of section 55 of the General Railroad law."

Before alluding to and discussing the other questions raised and argued in the defendant's brief it will serve a logical pur-

pose to first dispose of the defendant's several contentions which challenge the validity of the very fundamentals upon which the plaintiff's case rests.

If there was any testimony tending to prove negligence of the defendant, the plaintiff was entitled to have the case submitted to the jury and the granting of a nonsuit would have been error, unless it appeared on the plaintiff's case, by conclusive evidence upon which the minds of reasonable men could not reasonably differ, that the plaintiff's decedent was guilty of negligence, whereby the injury was caused. Contributory negligence is a defence and the burden of establishing it is upon the defendant. In the light of the testimony of the present case, we think the question of decedent's alleged negligence was clearly one for the jury to settle, and, therefore, it would have been improper for the trial judge to have directed a verdict for defendant on that ground.

Was there any testimony which would warrant a jury in finding that the defendant was negligent and that that negligence caused the decedent's injury and death? This requires a consideration of the facts upon which the plaintiff's claim is based. The defendant maintained a passenger station at Hohokus, for passengers to board trains of the defendant for New York City, and also trains going in the opposite direction. There were four tracks running northerly and southerly. The two inner tracks were used for freight trains running northerly and southerly, respectively, and the two outer tracks running in the same directions, respectively, were used for passenger trains. The company's main station building stood on the east side of the tracks where passenger tickets were sold, and on which side passengers boarded northbound trains, and on the west side of the track, opposite the main station, the defendant maintained a shed for passengers who intended to board southbound trains. Between the platforms of the two stations and across the four tracks the defendant had put down planking for the use of passengers to go from one station to the other. This planked walk, as it is termed in the defendant's brief, is forty-eight feet long and ten feet wide from the station proper or main station to the

waiting shed on the opposite side, where passengers boarded trains going to Jersey City. There were two inter track fences of wire mesh, each four feet high and seven hundred feet long, one fence being erected between the northbound passenger and northbound freight tracks, and the other was between the southbound passenger and southbound freight tracks.

On either side of the planking, the passageway between the stations, there was a sliding gate in each fence which appears was open for passengers to pass through the gateway on the morning of the accident, and there is considerable testimony to the effect that those gates had been open for a period of two years every morning to permit passengers to go through to take the six forty-three train for Jersey City. It was undisputed that on the fence near the gate and within a few feet of the place where decedent was struck there was a sign, about two feet above the ground, two feet six inches long and one foot wide, containing two-inch letters, in these words: "Gates are closed between 6:30 P. M. and 7 A. M.," which sign had been there for some time before the accident. It is, however, proper to state in this connection that there is no testimony explanatory of what was meant by the sign or what its purpose was or what was intended thereby. If the testimony of the witnesses, who were commuters, and who had occasion to take the six forty-three train every morning for a long period of time prior to the accident is credible, then it is clear that the actual practice of the defendant was to keep the gates open at that early hour to permit passengers to use the passageway for a southbound train.

It was dark at that time in the morning. This darkness was somewhat increased by a mist. According to the testimony of some of the witnesses it shortened the vision of approaching objects. At the point where the decedent was struck was a sharp curve of the tracks which extended southwesterly; the decedent had started to cross, a freight train had passed and another freight train with a large number of cars was just passing going between thirty and forty miles an hour, making considerable noise, when an unlooked for and

unscheduled engine running between twenty-five and thirty miles an hour rounded the curve and running northerly on the most easterly track struck the decedent, causing his death.

There was some testimony that no whistle was blown or a bell rung as a warning of the approach of the engine. There was also testimony that the engine had no headlight burning and was not discernible in the dark and the mist.

It seems to us that the facts of this case fall within the doctrine of *Carson* v. *Atlantic City Railroad Co.*, 83 *N. J. L.* 517. We think the facts of the present case are stronger than were those of the case cited for the application of the legal rule therein enunciated.

In the present case we have a railroad company which constructed and maintained a passageway across its tracks from one station to another for the use of its passengers. The two outer tracks used for passenger trains and the two inner ones for freight trains. The gates which permit free passage from one side to the other are left open so that passengers who lived on the east side of the tracks could take the early train by means of the passageway. A few minutes before six forty-three, the time when the six forty-three train is due, two freight trains propelled on the inner tracks, one consisting of a few cars and the other of a very large number, estimated by one witness to have been fifty cars, passed by. The decedent had just approached the main station, and, presumably, had started to cross by means of the passageway, and was apparently temporarily halted by the freight trains, and had just stepped on the easterly track, which was used for passenger trains, when the unscheduled locomotive engine, termed a "wild cat," propelled on the passenger track struck him. At least this is a view the jury could have properly taken from the testimony. It is true that O'Brien, the engineer of the "wild cat" engine, testified that he saw the deceased standing on the planking of the passageway between the rails of the most easterly track looking in the direction of the approaching engine when it was about fifteen or twenty feet from the place where he first saw the deceased in the position described. If the engine was running at the rate of thirty miles an hour

at that time, it would cover forty-four feet in a second, and, hence, the observation which the engineer could possibly have made was confined within the fraction of a quarter of a second. The engineer's statement would not be inconsistent with the theory that the deceased had looked in the direction of the approaching engine before he stepped from a place of safety onto the track and was still looking in the same direction when the engineer first observed him, and that when the deceased first looked, either through the lack of a burning headlight on the engine or because of its dimness, in conjunction with the darkness and mist which existed, the engine was not observable to the deceased until it was within fifteen feet of him, too late, however, for him to avoid being struck.

Under the facts of this case, as developed by the testimony, it is manifest that the defendant's contention that the plaintiff's intestate was a trespasser, or, at most, a mere licensee, is untenable. It is further urged that a new trial should be granted because of material error in the court's charge, in instructing the jury that the defendant was under a duty to provide a safe means of access to and from its station for the use of passengers, and also that the defendant was bound to use a high degree of care towards passengers entering or alighting from its trains. It was undisputed that the defendant had provided a safe means for access to and from its station for the use of passengers. But if that had been the question at issue before the jury, then the statement complained of would have been subject to the criticism that it was too broad, for, although it was the duty of the defendant to provide a safe means for access to and from its station, that duty would be fulfilled if in the performance of it it exercised reasonable care. Moreover, the trial judge repeatedly and in explicit terms instructed the jury that before the plaintiff was entitled to a recovery, it must be made to appear that the decedent's death was the result of defendant's negligence, which statement connotes the failure to exercise ordinary care.

Nor do we perceive any error in the statement that the defendant was bound to use a high degree of care towards passengers entering or alighting from its trains. It is well

settled that the term "high degree of care," when used in connection with public agencies which in their exercise are dangerous to life or limb, denotes no more than care commensurate with the risk of danger. *New Jersey Fidelity Insurance Co. v. Lehigh Valley Railroad Co.,* 92 *N. J. L.* 467, 470.

Counsel of defendant further argues that the court erred in charging the jury as follows: "A passenger crossing a track between a station and a train standing at the station to receive passengers is not bound to look to see whether another train is approaching, but, at the same time the accident occurred, the train which the deceased expected to take was not standing in the station; it had not yet ever appeared and there was no passenger train at the station to receive passengers."

We have carefully considered all that was said by the trial judge in connection with the above excerpt from his charge and are unable to discover anything therein which even hints at an intimation that the deceased was not under a duty to look for an approaching train, under the circumstances which confronted him.

Nor do we find any merit in the claim of defendant's counsel that the questions put to the witness O'Brien on his cross-examination by plaintiff's counsel were improperly admitted. O'Brien was a witness for defendant and gave his version of how the accident happened on his direct examination. It was, therefore, within the limit of legal propriety for plaintiff's counsel on cross-examination to put questions to O'Brien to test his credibility by eliciting from him whether he had not by statement or conduct in the presence of witnesses told a different story, and thereby lay a foundation for contradicting him by such witnesses. Of course, it is well understood that statements thus made by O'Brien could not be used as substantive evidence establishing negligence of the defendant, but could be used only for the purpose of shaking the truth of O'Brien's version of the accident as told by him on the witness-stand. But even if it is conceded that the questions objected to exceeded the bounds of proper cross-examination, it cannot avail the defendant, since it appears that the an-

swers of the witness were not harmful. We are also of the view that the objection made to the question put to Mr. Sherwood on his redirect examination, as modified by the court, as to what he noticed regarding the headlight of an engine on a foggy, misty morning as to its projection of light, affords no ground for setting aside the verdict in this case, as no possible harm could have resulted to the defendant from the answer of the witness.

It is further argued by counsel of defendant that the trial judge erroneously permitted counsel for the plaintiff to state to the jury that the plaintiff asked $40,000 damages.

We see no legal impropriety in this. The complaint states the sum sued for. The complaint is a constituent part of the record of the court. It has been the common practice in this state from time immemorial for plaintiff's counsel to state to the jury the amount that the plaintiff claims he is entitled to recover. The damage clause is a part of the complaint, and the right of counsel to read to the jury the complaint on files as an opening, has never been seriously questioned, and we do not see how it can be.

It is said that the verdict is against the weight of the evidence. We cannot say that the verdict was the result of mistake, partiality, passion or prejudice. There was ample evidence to justify the jury to reach the conclusion at which it arrived.

Nor do we think the verdict is excessive. The plaintiff's intestate at the time of his death was forty-one years of age; he was in good health and industrious. He was earning $42 per week, and at the end of the year had received a bonus of $100, which was to be continued. He had been in the employ of Rogers & Peet Company for eighteen years. There was testimony that his salary was to be raised the following year to $50 per week, and that his future prospects were good. According to the mortality tables the expectation of life of a man of forty-one years of age is twenty-seven years. He left a widow of thirty-four years of age, and a daughter and son, respectively, of the age of thirteen and eleven years. He turned his salary over to his wife for the support of the house-

hold, reserving very little for himself. In a case of this sort a jury is called upon to speculate. There is no other method at hand by which the damages can be measured. We cannot say that the jury in awarding $25,000 speculated wrongly on the chances of life that the decedent had and on his increase of earning power and advancement in life and his remaining in good health and being industrious and kind to his family, and that he would continue to turn over his earnings, as was his custom. As we are unable to say that the amount awarded is the result of sympathy, mistake, partiality, passion or prejudice, we cannot properly interfere with the verdict. *Bowes* v. *Public Service Railway Co.*, 110 *Atl. Rep.* 699.

Rule is discharged, with costs.