JAMES S. RAFFERTY, ADMINISTRATOR AD PROSEQUEN-
DUM OF THE ESTATE OF HENRY L. WILSON, DE-
CEASED, PLAINTIFF, v. PUBLIC SERVICE INTERSTATE
TRANSPORTATION COMPANY, A CORPORATION OF
THE STATE OF NEW JERSEY; ARTHUR THOMPSON
SHIPLEY AND BURRITT G. FLEMING, DEFENDANTS.

JAMES J. CURRAN, ADMINISTRATOR AD PROSEQUEN-
DUM OF THE ESTATE OF FREDERICK G. FLEMING,
DECEASED, PLAINTIFF, v. PUBLIC SERVICE INTER-
STATE TRANSPORTATION COMPANY, A CORPORATION
OF THE STATE OF NEW JERSEY, AND ARTHUR
THOMPSON SHIPLEY, DEFENDANTS.

Submitted May term, 1936—Decided July 30, 1936.

Before BROGAN, CHIEF JUSTICE, and Justices CASE and
PERSKIE.

For the plaintiffs, *John J. Rafferty* and *Philip Blacher*
(*Edmund A. Hayes,* of counsel).

For the defendants, *Henry H. Fryling* and *Carl T. Freg-
gens* (*Henry J. Sorenson,* of counsel).

The opinion of the court was delivered by

PERSKIE, J.    Both plaintiffs sued in a representative
capacity; Rafferty for the death of Henry L. Wilson and
Curran for the demise of Frederick G. Fleming.    Both dece-
dents were occupants of a Chevrolet automobile which became
involved in a collision with a passenger bus owned by defend-
ant Public Service Interstate Transportation Company, and
operated by its employe, Arthur Thompson Shipley, the other
defendant.

The accident occurred on June 27th, 1932, at or about Deans Lane, on state highway route No. 26, which is near New Brunswick, New Jersey. Decedents were en route to Trenton, New Jersey, and were traveling in a westerly direction and defendants were en route to New Brunswick and were traveling in an easterly direction.

The resultant verdicts of the first trial in favor of Wilson's estate ($20,000 against Public Service, &c., and $1,000 against Shipley) and in favor of Fleming's estate ($12,000 against Public Service, &c., and $1,000 against Shipley) were set aside by the trial judge on the ground that the jury, contrary to instructions, arbitrarily and illegally apportioned the degree of each defendant's negligence, and on that premise apportioned the verdicts against each defendant. Accordingly, the rules to show cause were made absolute and a new trial granted both as to liability and damages.

The causes were re-tried. The jury returned a verdict against both defendants of $20,000 in favor of the estate of Henry L. Wilson and a verdict of $5,000 in favor of the estate of Frederick G. Fleming.

In due season, application was made to the trial judge, in behalf of the defendants, for rules to show cause why the verdicts, as last stated, should not be set aside and a new trial granted. The grounds upon which that application was made to rest were that the verdicts were contrary to the weight of the evidence and that the damages were excessive. The application was denied; the trial judge so certified. On application to Part II of this court the rules to show cause now before us were allowed.

The grounds urged upon the trial judge below are again stressed here in support of the claim that the verdicts should be set aside.

*First:* Are the verdicts contrary to the weight of the evidence? We think not. "* * * It is the settled rule that a verdict will not be set aside, as against the weight of the evidence, unless the facts and circumstances clearly sustain the inference that it was the result of mistake, passion, prejudice or partiality. *Boesch* v. *Kick,* 97 *Id.* 92; *Queen* v.

*Jennings,* 93 *Id.* 353; *Floersch* v. *Donnell,* 82 *Id.* 357. And, in the determination of this question, the conclusion of the trial judge will be accorded due consideration; for he, through observation of the witnesses, may the better judge of their credibility." *Juliano* v. *Abeles,* 114 *N. J. L.* 510, 511; 177 *All. Rep.* 666.

There was a sharp conflict in the proofs as to just how and exactly where the accident occurred. It will serve no useful purpose to detail the proof adduced by each of the parties on the factual situation presented. Suffice it to say, in substance, that each party offered proof to place the responsibility for the collision on the other party; each offered proof to establish that the other party negligently and carelessly left his proper lane of travel as a result of which the accident occurred.

Thus a purely factual situation was presented, one which of necessity, had to be submitted to the jury for its determination. Although a contrary result could unquestionably have been supported, nevertheless, these proofs adduced fully support the result reached. It seems to us that defendants have failed to sustain clearly the necessary burden that the jury's verdicts were the result of mistake, passion, prejudice or partiality.

*Second:* Are the verdicts excessive? We think not.

*As to Henry L. Wilson.* Decedent was thirty-three years of age at the time of his death. He had an expectancy of life of thirty-two and one-half years and enjoyed good health prior to his death. He was, and had been for three years prior to his death, an instructor of English at Temple University in Philadelphia, Pennsylvania; he earned $2,800 a year, about one-half of which went to the support of his widow who was about thirty-two years old. The proof of Professor Lawrence C. Lockley, head of the department of marketing at Temple University, and a member of the executive committee of the school of commerce, who, among other things conferred with the dean on school personnel, appraisal and capability and worth of various members of the faculty, discloses that decedent was a "very capable and conscientious

instructor" that his work as a teacher in the classroom was "very effective." Decedent was doing graduate work and it would have taken him probably another year to complete his work for a decree of doctor of philosophy at the University of Pennsylvania. The students of Temple University were devoted to him; they named a club interested in writing after him.

For defendants it is strongly argued that if the award is viewed from an income basis the principal ($20,000) invested at six per cent. will return a yield to the widow almost equivalent to the contribution she received from her husband during his lifetime and at the same time she will have the principal intact. This, it is claimed, renders the verdict excessive. That claim is based on *Michaelson* v. *Erie Railroad Co.,* 7 *N. J. Mis. R.* 117; 144 *Atl. Rep.* 187. That case is clearly distinguishable. The decedent was forty years old, a laborer, unloading poles at the time of his death and earning about $57.50 a week (1929 wages). No proof appears as to his prospective increase of earning power and yet all the court did was to reduce a verdict of $46,800 to $25,000. Moreover, there is no proof in the case at bar that the capital fund can be safely invested to produce a yield of six per cent. Common experience is now to the contrary. Nor is there any proof that the widow will, at the same time, have the principal intact. Again, common experience teaches us that there is, after a deduction of costs and fees incident to litigation, a substantial difference between the amount recovered and the amount actually received by the successful litigant. In addition thereto the proofs in the instant case fully justify the deducible inference that decedent had reasonable prospects of advancement in life and of increase in earning power. *Rhodehouse* v. *Director-General,* 95 *N. J. L.* 355, 362, 363; 111 *Atl. Rep.* 662. In the Rhodehouse case decedent was an employe of Rogers & Peet Company, earning $42 a week. At the end of the year he received a bonus of $100 and his salary was to be raised to $50 a week. He was forty-one years old at the time of his death; he had an expectancy of life of twenty-seven years. The court said:

"* * * We cannot say that the jury in awarding $25,000 speculated wrongly on the chances of life that the decedent had and on his increase of earning power and advancement in life and his remaining in good health and being industrious and kind to his family, and that he would continue to turn over his earnings, as was his custom. As we are unable to say that the amount awarded is the result of sympathy, mistake, passion or prejudice, we cannot properly interfere with the verdict. *Bowes* v. *Public Service Railway Co.,* 94 *N. J. L.* 378; 110 *Atl. Rep.* 699."

The verdict here of $20,000 is not excessive.

*As to Frederick G. Fleming.* Decedent at the time of his death was twenty-one years old; his expectancy of life was forty-one and one-half years. He also had good and reasonable prospects of advancement in life and of an increase in earning power. He was graduated from high school in 1929. Thereafter he had jobs with the Curtis Wright Airplane Company, Transcontinental Western Air Company and Rolling Door Corporation, with some as an apprentice and with others as a junior mechanic. His earnings were not large but there is proof that he contributed toward the support of his next of kin. He was of good health prior to his demise. He was enrolled for the second year (at the time of his death) in the mechanical engineering department at Ohio State University.

We have held that, "jurors are of course entitled to know and consider the talents, abilities and personal appearance of deceased in order to guide them in assessing the amount of the damages as to pecuniary loss." *Smiley* v. *Reid Ice Cream Corp.,* 5 *N. J. Mis. R.* 82; 135 *All. Rep.* 504. In the Smiley case a verdict of $5,000 for the death of a girl eight years and eleven months old was held, in view of her appearance and capabilities, not to be excessive.

In *Kopko* v. *New York Live Poultry Trucking Co.,* 3 *N. J. Mis. R.* 498; 128 *Atl. Rep.* 870, a verdict of $19,500, reduced to $15,000 for the death of a boy twelve and one-half years old was sustained.

The verdict here of $5,000 is not excessive.

The rules to show cause are discharged, with costs.