[No. 17871.    Department Two.    October 5, 1923.]

*In the Matter of the Estate of* J. EUGENE JORDAN,
. *Deceased.*

JEANETTE JORDON GLASSMIRE *et al., Appellants,* v.
EDITH STEVA *et al., Respondents.*[1]

WILLS (20) — VALIDITY — UNDUE INFLUENCE — EVIDENCE—SUFFI-
CIENCY.  The evidence supports findings of the validity of a will, at-
tacked by daughters of testator and a divorced wife, between whom
and testator there was for many years no communication, where
it appears that the testator was of sound mind, that he had
made an almost identical will five years previously, and by the fact
that he was estranged from his daughters, to whom he bequeathed
one dollar each.

Appeal from a judgment of the superior court for
King county, Smith, J., entered July 22, 1922, upon
findings in favor the defendants, in a will contest, tried
to the court.    Affirmed.

*John T. Hunt* and *Peters & Powell,* for appellants.
*Philip Tworoger,* for respondent Steva.
*Totten & Totten,* for respondent Adams.

PEMBERTON, J.—This is a contest of the will of Dr.
J. Eugene Jordan, of Seattle, who died on the 21st
day of March, 1922, having resided in the city since
1886.    The contestants, Jeanette Jordan Glassmire,
Lucile Jordan Freitag and Florine Jordan, are the
daughters and only children of deceased living and
were given one dollar each under the provisions of
the will.    The value of the estate is approximately
$60,000.    Certain real estate near Aberdeen, ap-
praised at $48,000, was bequeathed to the city of Se-
attle, upon the condition that the city accept the gift

[1]Reported in 219 Pac. 2.

within one year and use the proceeds for the sole purpose of constructing a general hospital at Seattle to be known as the Dr. J. Eugene Jordan Municipal Hospital. Small portions of the property were given to Helen Adams, Sarah L. Brown, and Rose Mary McDougall, and all the rest and residue of the estate was devised and bequeathed to respondent Edith Steva, a friend of the deceased, known only since 1908. The city council of Seattle rejected the devise to the city, and under the terms of the will it passes to respondent Edith Steva.

The will was executed on January 18, 1922, having been prepared by Judge Hiram E. Hadley, and was similar to a former will prepared by Judge Hadley and signed by decedent on the 30th day of January, 1917. In the former will the daughters were each given one dollar, with the exception that Florine was given the sum of $1,000. Other minor changes were made but have no bearing upon the issues in controversy.

Dr. Jordan formerly lived with his family in Emporia, Kansas. In the year 1884, about nine months after the birth of his youngest daughter, he came west. For some years he paid the amount of $100 per month for the support of his family. In 1896, Mrs. Jordan instituted an action for divorce which resulted in a settlement of their property rights and a decree of divorce being granted to her in Potter county, Pennsylvania. For the next ten years, and for three years prior thereto, there was no correspondence between Dr. Jordan and the members of his family. In 1910, Florine visited her father and remained in Seattle for about one year. In 1913, the oldest daughter, Mrs. Glassmire, visited her father for the period of about four months. Her father was very much dissatisfied with her conduct.

After a trial, the court entered findings of fact and conclusions of law in favor of respondents, and entered judgment decreeing "that the document admitted to probate on the 23rd day of March, 1922, as the last will and testament of the late J. Eugene Jordan, be, and it is hereby adjudged to be the last will and testament of the said J. Eugene Jordan, deceased;" from which judgment this appeal is taken.

It is the contention of appellants that the respondents Edith Steva and Helen Adams entered into a conspiracy with the intent, purpose and design of procuring and inducing Dr. Jordan to make the will, and that it was not executed by him as of his own free will and volition, but was procured through duress and undue influence of respondents; and it is further claimed that Dr. Jordan was mentally unsound and incapable of making and executing the will of his own free will and volition. It is also contended that the evidence shows that, at the time of the making of the will, meretricious relations existed between the principal beneficiary, Mrs. Edith Steva, and Dr. Jordan; that he disinherited his children, the natural objects of his bounty, and that from these facts undue influence must be presumed.

The trial court heard the testimony and had an opportunity of observing the witnesses upon the witness stand, and with reference to respondent Mrs. Steva said:

"Now we come to the argument that has been made with reference to her meretricious relations with Dr. Jordan, and there is positive testimony here of Jennie of an act of immorality. In the first place, it is inconsistent with the other testimony given of Mrs. Steva. No other act of immorality has been shown, no showing has been made that she led a wilful or vicious life at any other time. Now, Mrs. Steva has

appeared here before the court as an entire stranger. The impression she has made upon me—I am speaking frankly, because this is the time to do it—is that of a quiet, modest, refined woman of mature years. There is nothing about her that suggests the sensual or gross or vulgar woman which she must have been to have played the part that she did, if it was the part of hypocrisy in the wiles claimed to have been exercised upon Dr. Jordan. So far as her personal attitude was concerned, she was self-possessed, she answered very frankly the questions put to her, and apparently with honesty and sincerety.''

Concerning this testimony of the daughter, the trial court made the following comment:

''But beyond this is another point which impressed me. Did Jennie see that act? If so, giving Jennie credit for being as honest and virtuous a woman as any woman in this court-room or elsewhere, wouldn't she have been shocked beyond measure by such an exhibition? Wouldn't she have been shocked not only at the immorality of Mrs. Steva but that of her own father? Wouldn't she have revolted from it so that she would have shunned Mrs. Steva? Yet we find her in the short period she was here visiting Mrs. Steva after that, and on the last Sunday night before Jennie went away she went and dined with Mrs. Steva, bidding her good bye with all the affection of respect and esteem.

''Now, gentlemen, Jennie, as you call her, is either mistaken or else she herself is conducting an act of duplicity which would shake the court's confidence in her. I cannot believe that any such act ever occurred.''

We are satisfied from the evidence that Dr. J. Eugene Jordan was of sound and disposing mind at the time of the execution of the will. The fact that he had made a prior will almost identical in conditions approximately five years before the execution of the last will shows that this will was not the result of undue

influence during the time of his weakened physical condition. While in one sense his daughters would be regarded as the natural objects of his bounty, yet in view of the fact that he had become estranged from his family, lived separate and apart, and had but a very limited correspondence with them for the past thirty-eight years, it seems that he might naturally desire to give the larger portion of his property to the city of Seattle for a municipal hospital and the balance to those who befriended him during his declining years. The fact that the city of Seattle refused to accept the gift could hardly be anticipated by the testator. This, however, does not impair the provision of the will granting the residue to respondent Edith Steva.

We are satisfied that the evidence supports the findings of the trial court. Taking this view of the facts, it is not necessary to review the many authorities supporting the appellants' theory of the law upon a different state of facts.

The judgment is affirmed.

MAIN, C. J., PARKER, FULLERTON, and TOLMAN, JJ., concur.