39 N.J. Super. 268 (1956)
120 A.2d 763
STANESLAW KULODZEJ, PLAINTIFF-RESPONDENT,
v.
LEHIGH VALLEY RAILROAD COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 1956.
Decided February 24, 1956.
*269 Before Judges GOLDMANN, FREUND and CONFORD.
*270 Mr. James B. Emory argued the cause for the defendant-appellant (Messrs. Emory, Langan & Lamb, attorneys; Mr. Charles W. Broadhurst and Mr. James J. Langan, of counsel and on the brief).
Mr. Aaron B. Weingast argued the cause for the plaintiff-respondent (Mr. Joseph A. Pennica, attorney).
The opinion of the court was delivered by FREUND, J.A.D.
On March 9, 1954 the plaintiff, a laborer employed by the defendant, was digging with a pick in a ditch of hard rock or shale, when a small stone or piece of shale struck his right eye. On March 18 he complained to his doctor that he could not see out of his right eye. Upon examination the doctor found the eye had been perforated and four days later it was enucleated.
Although the plaintiff has been in this country since 1911, he does not read or write, speaks only Polish and at the trial testified through an interpreter.
On May 5, 1955, for the purpose of obtaining a release from the plaintiff, there was a meeting of the plaintiff, a Polish interpreter, and representatives of the defendant. The plaintiff by his mark signed a release for the sum of $500, less a lien of $119 for sickness payments made to him by the United States Railroad Retirement Board. At the trial he testified that when he made his mark at the end of the release he was of the impression that the consideration was not for the loss of his eye, but for "compensation." The defendant claims that the purpose of the release was fully explained to the plaintiff, both in English and in Polish, by the interpreter. Admittedly, the defendant paid all medical and hospital expenses theretofore incurred.
The instant suit was brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., which provides for application of the rule of comparative negligence. The claim was made that the defendant was negligent in not furnishing the plaintiff with eye goggles while he was digging rock or stone. The defendant denied the occurrence of the *271 accident and alleged contributory negligence, stating it had furnished goggles to the plaintiff and that the execution of the release constituted a complete bar to the instant action.
The jury returned a verdict of $6,500 in favor of the plaintiff, the foreman stating that the jury found the defendant "negligent, along with contributory negligence on the part of the plaintiff. We arrived at the sum of $10,000: the percentages were Lehigh Valley 65% negligent, plaintiff 35% negligent. So the verdict is $6,500."
The defendant's motion for a new trial was denied. Pending the present appeal the defendant petitioned the Supreme Court for certification, which was denied.
The defendant argues on this appeal that the conduct of the plaintiff's attorney prevented a fair trial; that it was prejudicial and improper for him to state to the jury his opinion of the amount they should award as damages; and that the verdict invalidating the release and on the issue of negligence was against the weight of the evidence.
The issue of negligence, as well as that concerning the validity of the release arising from the contention that the plaintiff did not understand it as a complete discharge of all claims he might have, was for the jury.
It is obvious from a reading of the record that the litigation was bitterly contested. The trial consumed three days, during the course of which the defendant's attorney made no less than 69 objections. During the plaintiff's summation an additional eight objections were made. For some objections no reason was given; for others, objection was made because the question or remark related to matters not in evidence or misstated the testimony. All of this was in the presence of the jury. In general, although not in every instance, no request was made to the court to admonish the jury to disregard the remarks of the plaintiff's attorney. However, during the course of the trial the defendant's attorney did request the court to "ask counsel be reprimanded for making voluntary statements which have nothing to do with the case."
In his summation the plaintiff's attorney said to the jury:
*272 "* * * And I say to you in all truthfulness and honesty that this man should be given a sum of Fifteen Thousand Dollars."
Upon the defendant's objection, the court said:
"Do you mean he has no right to mention any figure to the jury?
Mr. Emory: He has a right to tell them what he has sued for. He has no right to say, I want you to bring in a verdict for so much money.
* * * The Court: The motion will be denied."
The ad damnum clause of the complaint demands judgment in favor of the plaintiff in the sum of $100,000, so that the statement in summation requesting the plaintiff be given $15,000 was far less than the amount demanded in the complaint. It has been held in Rhodehouse v. Director General, 95 N.J.L. 355 (Sup. Ct. 1920):
"We see no legal impropriety in this. The complaint states the sum sued for. The complaint is a constituent part of the record of the court. It has been the common practice in this state, from time immemorial, for plaintiff's counsel to state to the jury the amount that the plaintiff claims he is entitled to recover. The damage clause is a part of the complaint, and the right of counsel to read to the jury the complaint on files as an opening has never been seriously questioned, and we do not see how it can be."
To the same effect see Lukasiewicz v. Haddad, 24 N.J. Super. 399 (App. Div. 1953).
The court in its charge to the jury stated:
"* * * You are not bound by any such amount that counsel might mention to you; you are not to be governed by it, nor are you bound by it in any way at all. * * * So that you are not bound by any amount that was mentioned to you by counsel."
However, nowhere in the charge of the court was there any instruction to disregard the other comments and misstatements of counsel to which objection had been made.
We do not consider plaintiff's attorneys' statement regarding the amount of a verdict to be prejudicial to the defendant, particularly since the court in its charge stated that the jury was not bound or governed in its consideration *273 of damages by any amount that had been mentioned. Indeed, the plaintiff's attorney could have requested that the ad damnum clause be amended by reducing the amount stated in the complaint to the amount mentioned to the jury.
The defendant urges a further instance of alleged impropriety. The plaintiff's attorney in opening to the jury stated unequivocally that the defendant knew that the plaintiff had an attorney when the release was executed and that he was not notified of the arrangements for the signing of the release. He stated that:
"* * * we had filed suit before this release was attempted to be given to Mr. Kulodzej, * * * When we filed suit there was no release in existence."
The record shows that the release was dated May 5, 1954; the complaint was filed May 18, 1954, and the summons was served on the defendant on May 25, 1954. Thus, it is evident that the attorney for the plaintiff had not filed suit before the date of the release. When called by the defendant as a witness, he testified that he had not written any letter to the defendant. At no time during the course of the trial did he withdraw his remark that the defendant had obtained the release from the plaintiff subsequent to the institution of the suit. He stated that on April 6, 1954 he had written a letter to the United States Railroad Retirement Board and that he regarded that letter as notice to the defendant. There is absolutely no proof in the record to sustain such a contention.
In summation the following was stated by the plaintiff's attorney:
"Why, I can show you how to get a good release, I will show him in a minute; and I haven't been a lawyer since 1927; I am only a lawyer since 1953. That is all. I don't have all that experience. I didn't go to Harvard Law School. I went to school at night, worked during the day but I can show him how to get a release, and a good one. That is what makes me mad about this case. It aggravates my very soul how he can come into court and say, how can we get a good release. How? Why, it is so simple that I can get him one every day, and twice on Sunday, if he would like to pay me; get him a good release. * * *"
*274 He commented that no goggles were produced in court, and then said:
"* * * Mr. Emory referred to the testimony where he says he wore no  new goggles. That was, as I stated at the beginning of the trial, a typographical error 
Mr. Emory: I object to that. There is no proof of it. Counsel can say what he pleases at the trial, but he can't come up with something which is not in evidence. And there was no proof of that in evidence.
The Court: He can comment on it, I suppose. There is no proof of it, there is no question about that. * * *"
There was no testimony to support the plaintiff's attorney's claim of any typographical error and his remarks of such an error had previously been stricken by the court during the course of the trial.
Typical of counsel's remarks is the following:
"* * * Therefore, ladies and gentlemen, we conclude this case at this time, and in conclusion I say to you my adversary has used every technique known to the legal profession to try to slip out of this case, up to the last minute, and I stand before you trying to do this man an honest job. I didn't come here with any story, or any trumped up case. And I have to fight the case not only on what we have in the pleadings, but everything else that counsel throws at me in open court. * * *"
There are other instances of intemperate and inaccurate remarks, misquoted testimony, and statements outside the record. The conduct and statements of the plaintiff's attorney, in the presence of the jury, violated the spirit of the Canons of Professional Ethics, §§ 15, 17, 22 and 29. Indeed, we consider it reasonably inferable that they entered into the jury's deliberations to the prejudice of both litigants. In our opinion, they created such an aura of "mistake, partiality, prejudice and passion" as to vitiate the verdict of the jury. Blackman v. West Jersey & S.R. Co., 68 N.J.L. 1 (Sup. Ct. 1902); Patterson v. Surpless, 107 N.J.L. 305, 308 (E. & A. 1930); Leffler v. Aetna Life Ins. Co., 119 N.J.L. 370 (E. & A. 1938); La Rocca v. Ench, 35 N.J. Super. 53 (App. Div. 1955).
Accordingly, the judgment is reversed and a new trial ordered.