NANCY BOTTA, PLAINTIFF-APPELLANT-RESPONDENT, v. HERMAN G. BRUNNER, *ET AL.*, DEFENDANTS-RESPONDENTS-APPELLANTS.

Argued November 25, 1957—Decided February 3, 1958.

84

*Mr. Samuel A. Larner* argued the cause for plaintiff-respondent and cross-appellant, Nancy Botta (*Messrs. Budd, Larner & Kent,* attorneys).

*Mr. Robert Shaw* argued the cause for defendant-respondent-appellant, Herman G. Brunner (*Messrs. Shaw, Pindar, McElroy & Connell,* attorneys).

*Mr. Philip M. Lustbader* argued the cause for defendant-respondent, Leo Frieband (*Messrs. Schneider, Lustbader & Morgan,* attorneys; *Mr. George H. Harbaugh,* of counsel).

The opinion of the court was delivered by

FRANCIS, J. Certification was granted to review the judgment in this motor vehicle negligence action.

The plaintiff, Nancy Botta, was a passenger in an automobile driven by the defendant, Herman G. Brunner, when it collided with a car operated by co-defendant Leo Frieband. She sued both drivers to recover damages for injuries and monetary losses suffered. Rose De Santis, another rider in the Brunner vehicle, brought an independent suit against the two operators, claiming injuries and other damages. By consent, the actions were tried together. After eight days of trial and more than seven hours of deliberation, the jury returned verdicts of $5,500 in favor of Mrs. Botta and $300 in favor of Mrs. De Santis against the defendant Brunner. In each case Frieband was exonerated. The jury was then polled specifically on the separate claim of each plaintiff against each defendant and the verdicts were affirmed unanimously. Thereafter, both plaintiffs sought a new trial, alleging inadequacy of the awards and various errors of the court. Upon denial of the motions, the plaintiff Botta .

appealed, attacking the legal propriety of the order against her, as well as the entire judgment. The Appellate Division concluded that error had been committed in the charge to the jury as to the nature of the burden imposed on the plaintiff with respect to proof of her injuries, and ordered a new trial against the defendant Brunner but limited it to the sole issue of damages. The judgment in favor of Frieband was sustained on the ground that on the evidence presented, the jury had been justified in resolving the question of negligence in his favor. *Botta v. Brunner,* 42 *N. J. Super.* 95 (*App. Div.* 1956).

After granting certification to study the entire matter, we requested supplemental briefs in order to deal more fully with a problem which is currently vexing the trial courts, *i. e.,* the right of plaintiff's counsel in personal injury damage suits to suggest monetary mathematical formulas to a jury for the computation of compensation for pain and suffering.

At the outset it seems advisable to deal with the question of whether the Appellate Division erred in not ordering a new trial on all issues as to both Brunner and Frieband.

On this aspect of the case, our own examination of the record convinces us: (a) that there was adequate evidence of the negligence of both drivers; (b) that the jury could reasonably have found one or the other or both responsible for the mishap, and (c) that they made a clear and unmistakable finding that Brunner alone was at fault.

More particularly, our review of the evidence indicates that the jury could have found the following facts. Frieband, driving a 1941 Plymouth, was proceeding in second gear up a steep grade in a southerly direction on Matthew Court in Roxbury Township, New Jersey. It was drizzling at the time. When he was very close to the intersection of Laurie Road he came "practically to a stop," and looked to the left and right. At that place the view to the left was somewhat obstructed by foliage. At one point in his testimony Frieband said that he could see "possibly a hundred feet"; at another, "thirty feet." Nothing was coming. Laurie Road, in the vicinity of this intersection, consists of "a very

steep grade" so that a westbound car approaching Matthew Court would be moving downhill.

On satisfying himself that no car was in sight, Frieband remained in second gear and started to drive across Laurie Road at "possibly five or eight miles" per hour. When he was about eight or ten feet into the intersection, he saw the Brunner car "possibly 40 or 50 feet up on Laurie Road" coming west down grade at 30 to 40 miles per hour. He turned to the left, applied his brakes and stopped as the impact took place; the side of his left front fender came in contact with the right front of the other car. This put "a good dent" in his fender. After the impact, Brunner continued on and came to a stop 100 or 150 feet beyond the intersection on the wrong side of the road.

Brunner was familiar with the intersection, the obscured view and the fact that his course of travel to Matthew Court would be down grade. He admitted knowing that the "intersection was what might be termed a blind intersection" and that he had to be "extremely careful" because of the hedges at the corner. Yet he proceeded across Matthew Court without stopping, and never saw the Frieband car until the moment of impact. He conceded that Frieband's vehicle stopped at the point of collision while he continued for about 100 feet beyond the intersection and came to rest on the left hand side of the road. Mrs. Botta thought Brunner "was going fast" and she testified that he did not slow down as he approached the corner. Neither Brunner nor Mrs. De Santis made any estimate as to Frieband's speed. The only witness who said that he was moving fast was Mrs. Botta.

No effort has been made to outline the variations in the details of the testimony as they developed on direct and cross examination. And we have not undertaken to suggest from the proof all of the hypotheses on which the jury might have found both drivers guilty of negligence. The purpose of our appellate review is satisfied if the evidence discloses a reasonable basis upon which a jury of ordinary and fair-minded citizens could find, as it did, that

Brunner was the sole proximate cause of the mishap. *Hager v. Weber*, 7 *N. J.* 201, 210 (1951). As we have said, such a basis does emerge from the record and accordingly their judgment must be respected. Moreover, not only is their selection of the culpable party rationally supportable, but in our view it also was so clearly and definitively formulated as to make inescapable the conclusion that mistake or misapprehension of any kind was not involved and that it was not in any way affected by the error in the charge on the subject of damages. Accordingly, we are satisfied that the issue of liability was settled fairly and upon sufficient evidence, and so ought to stand. *Rempfer v. Deerfield Packing Corp.*, 4 *N. J.* 135, 149 (1950) ; *Robinson v. Payne*, 99 *N. J. L.* 135, 142 (*E. & A.* 1923).

Thus we are brought to a consideration of the portion of the trial court's charge which the Appellate Division held to be prejudicially erroneous.

There was a sharp dispute at the trial as to the extent of Mrs. Botta's injuries and the pecuniary losses which flowed from them. The probability that she, as a passenger, would receive a verdict against one or both of the defendants undoubtedly was evident to all parties. That realization presumably accounts in some measure for the fact that the major portion of the proof was concerned with the injury claim. And the emphasis on that facet of the case must have served to alert the jury's particular attention to it and to the court's explanation of the controlling law with respect to it.

After a full discussion of the liability aspects of the case, the court said:

"If you come to the question that either or both of these defendants are liable either to Mrs. De Santis or to Mrs. Botta or to both, then you take up the question of damages; and so now in the second part of my charge I will deal with damages."

Then followed an elaborate treatment of the allegations of injury and the principles to be applied in considering them. Toward the close of the explanation, he said:

"I think I have already charged you with regard to the *responsibility of Mrs. Botta to prove by clear, convincing evidence* that her injuries were the result of this accident, and that she is only to recover for those injuries which were probably the result of this accident. \* \* \*." (Emphasis added.)

No earlier portion of the charge contained any reference to a duty to establish the injuries by clear and convincing evidence. As the Appellate Division noted, it may be that the court had in mind his previous statement that:

"The plaintiffs have the burden of proving what injuries were the natural and proximate result of the defendants' negligence, and the law casts the burden on them. The evidence must establish with *reasonable certainty* that the injuries and losses for which you award any damages are properly attributable to the accident. \* \* \*." (Emphasis added.)

However, it cannot be said definitely that he intended to equate "clear and convincing" proof with proof to a "reasonable certainty." (Note that "reasonable certainty" has been declared to be an improper expression. *Budden v. Goldstein,* 43 *N. J. Super.* 340, 347 *(App. Div.* 1957); cf. *Flexmir, Inc., v. Lindeman & Company,* 4 *N. J.* 509, 514 (1950)).

In any event, it is elementary that the burden cast on the plaintiff to prove that her injuries resulted from the accident is not that she must do so by clear and convincing evidence, but only by a preponderance of the evidence or the greater weight of the evidence. 38 *Am. Jur., Negligence,* § 285. We agree with the Appellate Division that to describe the plaintiff's task in terms of necessity for clear and convincing evidence is to require a higher quality of proof than the law demands. *Cf. Davidson v. Fornicola,* 38 *N. J. Super.* 365 *(App. Div.* 1955). And in a trial where the controversy over injuries loomed so large, the imposition of that heavier burden must be condemned as erroneous. To illustrate the atmosphere in which the rule was announced, it is only necessary to refer to the court's assertion made just a few minutes earlier in the course of his charge:

"In this case there is a very serious dispute as to Mrs. Botta's injuries resulting from the accident, the defendants contending very seriously that her present condition is not a result of this accident; that it is remote, unrelated to the accident."

It is said occasionally that the phrases, "preponderance or greater weight of the evidence," "clear and convincing evidence" and "beyond a reasonable doubt," which are given to juries as the tests to be applied to the proof in determining whether a particular finding or verdict is warranted, are illusory; that to the layman they represent distinctions and not differences. We cannot agree. These traditional devices, which provide the scales on which the persuasive impact of the sum total of the evidence must be weighed, have a long history of distinctive connotations. That evidence of greater weight, *i. e.*, of more probative force, of higher quality, is required to satisfy one test as distinguished from the other, is not difficult either to understand or to explain or to illustrate to a jury. To concede otherwise is to admit that words are no longer our servants. Until the time arrives when experience or experiment demonstrates that such long recognized distinctions have no practical utility, we must adhere to them. *Cf. Larson v. Jo-Ann Cab Corp.*, 209 *F. 2d* 929 (2 *Cir.* 1954).

In prosecuting the appeal, plaintiff urged that the trial court also erred in refusing to permit counsel to suggest to the jury in summation a mathematical formula for the admeasurement of damages for pain and suffering. The Appellate Division agreed with plaintiff's viewpoint. The problem is of sufficient current urgency to demand our attention.

In his closing argument to the jury, after speaking of actual monetary losses, plaintiff's counsel said:

"You must add to that, next, the pain and suffering and the disability that she has undergone from August 2nd, 1953 to now. Take that first. That is 125 weeks of pain and suffering. Now, that is difficult to admeasure, I suppose. How much can you give for pain and suffering? As a guide, I try to think of myself. What would be a minimum that a person is entitled to? And you must place yourself in the position of this woman. If you add that dis-

ability which has been described to you, and you were wearing this 24 hours a day, how much do you think you should get for every day you had to go through that harrowing experience, or every hour? Well, I thought I would use this kind of suggestion. I don't know. It is for you to determine whether you think I am low or high. Would fifty cents an hour for that kind of suffering be too high?"

On objection, the court declared the argument to be improper as to "the measure of damages for pain and suffering" and directed that it be discontinued.

But the Appellate Division sanctioned the practice, saying:

"* * * [W]e see no logical reason why the fair scope of argument in summation by trial counsel should not be permitted to include mention of recovery in terms of amount. It is well settled that counsel may advise the jury as to the amount sued for, *Rhodehouse v. Director General,* 95 *N. J. L.* 355 (*Sup. Ct.* 1920), and we have recently held that he may state his opinion that the jury should allow a stated amount short of the sum sued for. *Kulodzej v. Lehigh Valley R. Co.,* 39 *N. J. Super.* 268 (*App. Div.* 1956).

The argument is sometimes heard that since there is no evidence in the case as to how much pain and suffering, or a given physical disability, is worth in dollars, and since it is the exclusive function of the jury to fix the amount by its verdict, counsel should not be allowed to ask the jury to return a named amount. *Stassun v. Chapin,* 324 *Pa.* 125, 188 *A.* 111 (*Sup. Ct.* 1936). We do not think this follows. Counsel may argue from the evidence to any conclusion which the jury is free to arrive at, and we perceive no sound reason why one of the most vital subjects at issue, the amount of recovery, should not be deemed within the permitted field of counsel's persuasion of the jury by argument. This, within reasonable limits, includes his supporting reasoning, as in the present case, whether soundly conceived on the merits or not. *Cf. Standard Sanitary Mfg. Co. v. Brian's Adm'r,* 224 *Ky.* 419, 6 *S. W.* 2d 491, 493 (*Ct. App.* 1928); *Dean v. Wabash R. Co.,* 229 *Mo.* 425, 129 *S. W.* 953, 962 (*Sup. Ct.* 1910). If necessary, the trial court can in its instructions caution the jury that the argument does not constitute evidence as to the amount of damages."

For hundreds of years, the measure of damages for pain and suffering following in the wake of a personal injury has been "fair and reasonable compensation." This general standard was adopted because of universal acknowledgment that a more specific or definitive one is impossible. There is and there can be no fixed basis, table, standard, or mathematical rule which will serve as an accurate index and guide to the establishment of damage awards for per-

sonal injuries. And it is equally plain that there is no measure by which the amount of pain and suffering endured by a particular human can be calculated. No market place exists at which such malaise is bought and sold. A person can sell quantities of his blood, but there is no mart where the price of a voluntary subjection of oneself to pain and suffering is or can be fixed. It has never been suggested that a standard of value can be found and applied. The varieties and degrees of pain are almost infinite. Individuals differ greatly in susceptibility to pain and in capacity to withstand it. And the impossibility of recognizing or of isolating fixed levels or plateaus of suffering must be conceded.

It is just as futile to undertake to attach a price tag to each level or plateau which could be said to have a reasonable basis in scientific or economic fact. Any effort to do so must become lost in emotion, fancy and speculation. *Lindroth v. Christ Hospital,* 21 *N. J.* 588, 597 (1956); *Moore v. Public Service Coordinated Transport,* 15 *N. J. Super.* 499, 510 (*App. Div.* 1951); *Dandrea v. Centofante,* 13 *N. J. Super.* 445, 447 (*App. Div.* 1951); *Sandoval v. Southern California Enterprises,* 98 *Cal. App. 2d* 240, 219 *P. 2d* 928, 938 (*D. Ct. App.* 1950); *Roedder v. Rowley,* 28 *Cal. 2d* 820, 172 *P. 2d* 353 (*Sup. Ct.* 1946); *Gorczyca v. New York, New Haven & Hartford R. Co.,* 141 *Conn.* 701, 109 *A. 2d* 589 (*Sup. Ct. Err.* 1954); *Jackson v. LaFollette Hardware & Lumber Co.,* 101 *F. Supp.* 916 (*D. C. E. D. Tenn.* 1950), affirmed 193 *F. 2d* 647 (6 *Cir.* 1951); *St. Louis Southwestern Ry. Co. v. Kendall,* 114 *Ark.* 224, 169 *S. W.* 822, *L. R. A.* 1915F, 9 (*Sup. Ct.* 1914); *Bostwick v. Pittsburgh Rys. Co.,* 255 *Pa.* 387, 100 *A.* 123 (*Sup. Ct.* 1917); *Goodhart v. Pennsylvania R. Co.,* 177 *Pa. St.* 1, 35 *A.* 191 (*Sup. Ct.* 1896); *Baker v. Pennsylvania Co.,* 142 *Pa. St.* 503, 21 *A.* 979, 12 *L. R. A.* 698 (*Sup. Ct.* 1891); *The Mediana, A. C.* 113, 116 (1900); 15 *Am. Jur., Damages,* 482; 25 *C. J. S. Damages* § 93; *Belli, Modern Trials,* p. 1632 (1954), citing *Beecher, "Pain in Men Wounded in Battle,"* 123 *Ann. Surg.* 96 (1946).

As a consequence, the law has declared the standard for measuring damages for personal injuries to be reasonable compensation and has entrusted the administration of this criterion to the impartial conscience and judgment of jurors who may be expected to act reasonably, intelligently and in harmony with the evidence. *Bardack v. Extract,* 13 *N. J. Super.* 350, 356 (*App. Div.* 1951); *Beck v. United States Fidelity & Guaranty Co.,* 76 *So.* 2d 120 (*La. Ct. App.* 1954); *Western & A. R. R. v. Fowler,* 77 *Ga. App.* 206, 47 *S. E.* 2d 874 (*Ct. App.* 1948); *National Fruit Product Co. v. Wagner,* 185 *Va.* 38, 37 *S. E.* 2d 757 (*Sup. Ct.* 1946); *Parr v. Douglas,* 253 *Wis.* 311, 34 *N. W.* 2d 229 (*Sup. Ct.* 1948); *Wersebe v. Broadway & S. A. R. Co.,* 1 *Misc.* 472, 21 *N. Y. S.* 637 (*Sup. Ct.* 1893). This does not mean that jurors are free to fix what they would want as compensation if they had sustained the injuries or what the pain and suffering would be worth to them. The so-called "golden rule" may not be applied to such damages. *Goodrich v. Thomas Cort,* 80 *N. J. L.* 653, 657 (*Sup. Ct.* 1910); *Stein v. Meyer,* 150 *F. Supp.* 365 (*D. C. E. D. Pa.* 1957); *Ravel v. Couravallos,* 245 *S. W.* 2d 731 (*Tex. Civ. App.* 1952); *Gulf, C. & S. F. Ry. Co. v. Carson,* 63 *S. W.* 2d 1096 (*Tex. Civ. App.* 1933). Obviously, the quoted portion of plaintiff's summation here runs counter to this principle. However, we prefer to base our disposition of the appeal on a more extensive treatment of the problem.

But since the nature of the subject matter admits only of the broad concept of reasonable compensation, may counsel for the plaintiff or the defendant state to the jury, in opening or closing, his belief as to the pecuniary value or price of pain and suffering per hour or day or week, and ask that such figure be used as part of a mathematical formula for calculating the damages to be awarded? Without expressing a personal opinion, may he suggest that the valuation be based on so much per hour or day or week, or ask the jurors if they do not think the pain and suffering are fairly worth so much per hour or day or week—and then demonstrate, by employing such rate as a factor in his

computation, that a verdict of a fixed amount of money would be warranted or could be justified?

Some jurisdictions have sanctioned such practice. *Kindler v. Edwards,* 126 *Ind. App.* 261, 130 *N. E. 2d* 491 (*App. Ct.* 1955); *Four-County Electric Power Ass'n v. Clardy,* 221 *Miss.* 403, 73 *So. 2d* 144, 44 *A. L. R. 2d* 1191 (*Sup. Ct.* 1954); *J. D. Wright & Son Truck Line v. Chandler,* 231 *S. W. 2d* 786 (*Tex. Civ. App.* 1950); but compare, *Imperial Oil, Limited v. Drlik,* 234 *F. 2d* 4 (6 *Cir.* 1956); *Texas Employers' Insurance Association v. Cruz,* 280 *S. W. 2d* 388 (*Tex. Civ. App.* 1955); *Warren Petroleum Corporation v. Pyeatt,* 275 *S. W. 2d* 216 (*Tex. Civ. App.* 1955); *Kimbell v. Noel,* 228 *S. W. 2d* 980 (*Tex. Civ. App.* 1950); *Aetna Oil Co. v. Metcalf,* 298 *Ky.* 706, 183 *S. W. 2d* 637 (*Sup. Ct.* 1944); others, which we shall advert to, have condemned it. The precise question has not been passed upon by this court until now. Accordingly, we are free to adopt the rule which in our judgment best serves the cause of justice and its fair and orderly administration.

█ As has been indicated, pain and suffering have no known dimensions, mathematical or financial. There is no exact correspondence between money and physical or mental injury or suffering, and the various factors involved are not capable of proof in dollars and cents. For this reason, the only standard for evaluation is such amount as reasonable persons estimate to be fair compensation. *Denco Bus Co. v. Keller,* 202 *Okl.* 263, 212 *P. 2d* 469, 475 (*Sup. Ct* 1949); *Roedder v. Rowley, supra.* In discussing the matter of a proposed mathematical formula for determining the allowance for future pain and suffering and inconvenience, the Eighth Circuit Court of Appeals said in *Chicago & N. W. Ry. Co. v. Candler,* 283 *F.* 881, 884, 28 *A. L. R.* 1174 (1922):

"No such process is possible in estimating the amount to be allowed for pain and suffering, or for pain and inconvenience. In the matter of pain, suffering, or inconvenience, no books are kept, no inventories made, no balances struck.

Neither the plaintiff in the case nor any one else in the world has ever established a standard of value for these ills. The only

proof ever received to guide the jury in determining the amount of the allowance they should make is, broadly stated, the nature and extent of the injury, its effect and results. They are instructed to allow a reasonable sum as compensation, and in determining what is reasonable under the evidence to be guided by their observation, experience and sense of fairness and right. At the best the allowance is an estimated sum determined by the intelligence and conscience of the jury, and we are convinced that a jury would be much more likely to return a just verdict, considering the estimated life as one single period, than if it should attempt to reach a verdict by dividing the life into yearly periods, setting down yearly estimates, and then reducing the estimates to their present value. The arbitrariness and artificiality of such a method is so apparent that to require a jury to apply it would, we think, be an absurdity."

In our neighboring state of Pennsylvania the rule assigning the admeasurement of damages for injuries to the jury has been adhered to over the years with the utmost fidelity. No suggestion of the character made in the present case either by court or counsel is tolerated; nor is reference to the *ad damnum* clause of the complaint permitted. Speaking on the subject in a fairly early opinion, the Supreme Court said:

"Pain and suffering are not capable of being exactly measured by an equivalent in money, and we have repeatedly said that they have no market price. The question in any given case is not what it would cost to hire someone to undergo the measure of pain alleged to have been suffered by the plaintiff, but what, under all the circumstances, should be allowed the plaintiff in addition to the other items of damage to which he is entitled, in consideration of suffering necessarily endured. * * * This should not be estimated by a sentimental or fanciful standard * * *.

But let us further assume that these days of enforced idleness have been days of severe bodily suffering. The question then presented for the consideration of the jury would be: What is it reasonable to add to the value of the lost time in view of the fact that the days were filled with pain, instead of being devoted to labor? Some allowance has been held to be proper; but, in answer to the question, 'How much?' the only reply yet made is that it should be reasonable in amount. Pain cannot be measured in money. * * * The word 'compensation,' in the phrase 'compensation for pain and suffering,' is not to be understood as meaning price or value, but as describing an allowance looking towards recompense for or made because of the suffering consequent upon the injury." *Goodhart v. Pennsylvania R. Co., supra* [177 *Pa.* 1, 35 *A.* 192].

The same court at a later date even more graphically reiterated the same views:

"The nature of pain and suffering is such that no legal yardstick can be fashioned to measure accurately reasonable compensation for it. No one can measure another's pain and suffering; only the person suffering knows how much he is suffering, and even he could not accurately say what would be reasonable pecuniary compensation for it. Earning power and dollars are interchangeable; suffering and dollars are not. Two persons apparently suffering the same pain from the same kind of injury might in fact be suffering respectively pains differing much in acuteness, depending on the nervous sensibility of the sufferer. Two persons suffering exactly the same pain would doubtless differ as to what reasonable compensation for that pain would be. This being true, it follows that jurors would probably differ widely as to what is reasonable compensation for another's pain and suffering, no matter how specific the court's instructions might be." *Herb v. Hallowell,* 304 *Pa.* 128, 154 *A.* 582, 584, 85 *A. L. R.* 1004 (*Sup. Ct.* 1931).

And in a case where plaintiff's counsel, in cross-examining the defendant, called express attention to the *ad damnum* clause, the Federal Court for the Third Circuit, which follows the Pennsylvania rule, declared:

"In damage cases there is no fixed sum in controversy. The amount of damages a party recovers is ascertained by the jury from evidence regularly offered and admitted by the court of such pertinent facts as will enable the jury to itself fix the money value of the injury sustained. While among those facts may, at times, be certain definite amounts in the way of medical, surgical, and nursing expenses, and other items capable of exact fixation, yet, when it comes to determining the amount of the damages to be awarded, this is the province of the jury alone, and of a jury uninfluenced by the figures or estimates of any other person as to the amount thereof. The law, therefore, permits no estimate to be given by either party to the jury, even under oath, of the money amount of such damages, and to get the same character of estimates before a jury by indirect methods is a reprehensible practice." *Vaughan v. Magee,* 218 *F.* 630 (3 *Cir.* 1914).

Some further expressions from the Pennsylvania cases are worthy of consideration. "[T]o suggest the idea of price to be paid to a volunteer as an approximation to the money value of suffering is to give loose rein to sympathy and caprice." *Baker v. Pennsylvania Co., supra;* "damages are to be ascertained by the jury from the evidence, and

are not to be determined by any estimate of counsel, not based on the evidence." *Quinn v. Philadelphia Rapid Transit Co.*, 224 *Pa.* 162, 73 *A.* 319 (*Sup. Ct.* 1909); such action is an "attempt to obtain an unfair advantage in the trial of a cause." *Carothers v. Pittsburg Rys. Co.*, 229 *Pa.* 558, 79 *A.* 134 (*Sup. Ct.* 1911).

"Where the evidence enables the jury to find the loss of earnings or other element of damage, that a plaintiff will thereafter sustain from year to year, the present worth thereof may be ascertained, but pain has no market value and cannot be accurately estimated in dollars and cents. And therefore calling upon the jury to fix a separate yearly value upon plaintiff's future pain and suffering, and reduce each of said annual amounts to its present worth, and then add the sum total, as a step in arriving at the verdict, would be a vain request, and tend to complicate instructions to juries in such cases." *Bostwick v. Pittsburgh Rys. Co., supra.*

"In cases where the damages are unliquidated and incapable of measurement by a mathematical standard, statements by plaintiffs' counsel as to the amount claimed or expected are not to be sanctioned, *because they tend to instill in the minds of the jury impressions not founded upon the evidence.*" *Stassun v. Chapin,* 324 *Pa.* 125, 188 *A.* 111 (*Sup. Ct.* 1936); statements calling attention to claims and amounts not supported by the evidence *constitute* a suggestion to the jury *"which in their minds takes the place of evidence."* *Clark v. Essex Wire Corporation,* 361 *Pa.* 60, 63 *A. 2d* 35 (*Sup. Ct.* 1949); it is an "exceedingly bad practice" because "it tends to get figures and amounts into the jury's mind without evidence." *Reese v. Hershey,* 163 *Pa.* 253, 29 *A.* 907 (*Sup. Ct.* 1894); it "gives a basis, not established by evidence, on which to calculate the verdict. Admonitions by the court that such is not the purpose in stating the amount claimed will not be sufficient to eliminate it entirely from the minds of the jurors. It will remain with them, and, consciously or unconsciously, it will influence them in arriving at a conclusion." *Hollinger v. York Rys. Co.,* 225 *Pa.* 419, 74 *A.* 344 (*Sup. Ct.* 1909); "the verdict in an action of tort should be a deduction drawn by the jury from the evidence, and *not a mere formal*

*adoption of calculations submitted by counsel."* *Bullock v. Chester & Darby Telford Road Co.,* 270 *Pa.* 295, 113 *A.* 379 *(Sup. Ct.* 1921). And see also, *Joyce v. Smith,* 269 *Pa.* 439, 112 *A.* 549 *(Sup. Ct.* 1921); *Porter v. Zeuger Milk Co.,* 136 *Pa. Super.* 48, 7 *A. 2d* 77 *(Super. Ct.* 1939). Recently, in the United States District Court for the Eastern District of Pennsylvania, plaintiff's counsel said to the jury in summation [150 *F. Supp.* 366]:

"How much would you pay to be afflicted with a condition that you couldn't hold cups or saucers, something that is going to be permanent? Would you take it for $5,000? Would you take it for $50,000.00?"

This suggestion of arbitrary amounts was held to be erroneous and as warranting a new trial. *Stein v. Meyer, supra.*

There can be no doubt that the prime purpose of suggestions, direct or indirect, in the opening or closing statements of counsel of per hour or *per diem* sums as the value of or as compensation for pain, suffering and kindred elements associated with injury and disability is to instill in the minds of the jurors impressions, figures and amounts not founded or appearing in the evidence. An outspoken exponent of the approach described its aim in this fashion:

"When you break down pain and suffering into seconds and minutes and do it as objectively as this [on a blackboard], then you begin to make a jury realize what permanent pain and suffering is and that $60,000 at five dollars a day isn't an adequate award. (Insertion ours.)

So let's put on the board $60,000 for pain and suffering. Of course in your opening statement you are only privileged to say that you are going to explain to the jury and ask for $60,000 as pain and suffering in order to make up your total figure. It would be improper *to argue*, this must be reserved for the final summation. (Emphasis added.)

The jurors must start thinking in days, minutes and seconds and in five dollars, three dollars and two dollars, so that they can multiply to the absolute figure. Maybe your juror will feel that $5 a day is not enough, that it should be $10 per day. They may feel that it should be $4 or $3 a day. At least you have started them thinking; and when they follow the mechanics of multiplication they must by this procedure come to some substantial figure if they are fair. A jury always tries to be fair. Never forget this."

Belli, "The Use of Demonstrative Evidence in Achieving the More Adequate Award," Address before the Mississippi State Bar Association (1954) ; Belli, Modern Trials, p. 1632 (1954)

And:

"Depending on the jurisdiction it may be permissible during argument to ask for $2 a day for pain and suffering." Id., § 305(8)

Clearly these statements are what analysis shows them to be—suggestions of valuations or compensation factors for pain and suffering. They have no foundation in the evidence. They import into the trial elements of sheer speculation on a matter which by universal understanding is not susceptible of evaluation on any such basis. No one has ever argued that a witness, expert or otherwise, would be competent to estimate pain on a per hour or per diem basis. Here, notice may be taken of the dissent of Justice Roberds in Four-County Electric Power Ass'n v. Clardy, supra [221 Miss. 403, 73 So. 2d 152], where the majority of the Mississippi Supreme Court approved the mathematical formula argument. Speaking of a chart used by plaintiff's attorney in his opening statement, he said:

"It enumerates the damages, past, present and future, under various headings, such as, for instance, 'Pain, Suffering and Mental Anguish $5.00 Per Day, 28 Months or 840 Days at $5.00 Per Day—$4,200.00.' That was an estimate for past damages. It contains another heading similar to this for future pain, suffering and mental anguish, estimated for '* * * 38 Years and 8 Months, or 13,920 Days at $5.00 Per Day—$69,600.00' * * *. Now, this was at the very beginning of the trial of the case. No testimony had been offered of the enumerated damages. Indeed, none would have been competent at any time as to some of them, for instance, the daily damage for pain, suffering and mental anguish. Estimating that damage was a matter for the jury. No witness would have been permitted to give his estimate of that damage."

May counsel, therefore, by argument, which in effect becomes testimony, suggest that such a basis is a proper one for a jury to employ? Cf. Warren Petroleum Corporation v. Pyeatt, supra. We think not. If the day ever arrives when that type of speculation becomes accepted by the courts

generally as a fair mathematical factor for use by juries, proponents of the view that motor vehicle accident injury claims should be treated on some basis similar to workmen's compensation, will have grist for their mill. But that is a subject with which we cannot now concern ourselves.

Aside from the aspect of speculation involved and the circumstance that the suggestion of a precise valuation of pain and suffering by the hour or day introduces into the case in terms of fact that which is not susceptible of proof, another difficulty is presented, consideration of which cannot be avoided by an appellate tribunal concerned with the fair and orderly administration of justice. If plaintiff's counsel is permitted to make such valuation suggestions to the jury, justice cannot be administered fairly in the trial of this type of case. Can defense counsel argue that pain and suffering are worth only $2.50 per day or $1 or any lesser sum? If he attempts to do so, he must necessarily inject as further factual suggestions valuations which again are incapable of proof. By doing so, he fortifies his adversary's implication that the law recognizes pain and suffering as having been evaluated and as capable of being evaluated on such basis. Much emotional reasoning can be advanced for the thesis proposed in behalf of injured plaintiffs. But in our search for equal opportunity in the trial of cases for the contending parties to offer their proof and submit their arguments thereon, the practice cannot be justified. And when the inequity of such trial procedure is considered along with the obvious impropriety of attempting to substitute unproven, speculative and fanciful standards of valuation for evidence, the duty to adjudge the illegality of the proposal in its entirety is plain. In sensitive situations such as this, we must be certain that in the exercise of appellate review we do not fall short of the full measure of our obligation.

Other jurisdictions have expressed substantially the same point of view. In *Ahlstrom v. Minneapolis, St. Paul & Sault Ste M. R. Co.*, 244 *Minn.* 1, 68 *N. W. 2d* 873, 888 (*Sup. Ct.* 1955), plaintiff's counsel submitted to the jury

as acceptable: "Pain and suffering and disability—past and future ($5 per day for 40.75 years) . . . . . . . . . . . $91,670." The court said:

"An award for pain, suffering, and disability on a per diem basis ignores the subjective basis of such damages. * * * Each day of suffering is a part of a whole and will vary and generally decrease as time goes on. To permit a per diem evaluation of pain, suffering, and disability would plunge the already subjective determination into absurdity by demanding accurate mathematical computation of the present worth of an amount reached by guesswork. * * * Certainly no amount of money per day could compensate a person reduced to plaintiff's position, and to attempt such evaluation, as in this case, leads only to monstrous verdicts." 68 N. W. 2d at *page* 891.

The rule was followed in *Hallada v. Great Northern Railway,* 244 *Minn.* 81, 69 *N. W.* 2d 673, 687 (*Sup. Ct.* 1955). However, in *Boutang v. Twin City Motor Bus Company,* 248 *Minn.* 240, 80 *N. W.* 2d 30, 39 (*Sup. Ct.* 1956), although the opinion protests to the contrary, the doctrine appears to be tempered somewhat. In our judgment, the unqualified viewpoint of the earlier cases provides a sounder approach to achievement of a just result.

As far back as 1900 it was accepted in England that damages of the kind under discussion could not be fixed by a mathematical formula. In *The Mediana, supra,* the statement was:

"You very often cannot even lay down any principle upon which you can give damages. * * * Take the most familiar and ordinary case: how is anybody to measure pain and suffering in moneys counted? Nobody can suggest that you can by any arithmetical calculation establish what is the exact amount of money which would represent such a thing as the pain and suffering which a person has undergone by reason of an accident. * * *"

Other cases in which various references by counsel or the court to specific amounts as damages were condemned are: *Gardner v. State Taxi, Mass.,* 142 *N. E.* 2d 586 (*Sup. Jud. Ct.* 1957); *Warren Petroleum Corporation v. Pyeatt, supra;* *Louisville & N. R. Co. v. Bean,* 49 *Ga. App.* 4, 174 *S. E.* 209

*(Ct. App.* 1934); *Union Pac. R. Co. v. Field,* 137 *F.* 14 (8 *Cir.* 1905); *Alabama G. S. R. Co. v. Carroll,* 84 *F.* 772 (5 *Cir.* 1898); *St. Louis & S. F. Ry. Co. v. Farr,* 56 *F.* 994 (8 *Cir.* 1893); *Wersebe v. Broadway & S. A. R. Co., supra.*

In the final analysis, we hold the view that suggestions of the sort we are asked to approve here constitute an unwarranted intrusion into the domain of the jury. As was said in *Dandrea v. Centofante, supra,* the matter of assessment of reasonable compensation for personal injuries must be left to the traditional trier of the fact and cannot be gauged by any established graduated scale. And we endorse the approval by the Appellate Division in *Moore v. Public Service Coordinated Transport, supra,* of the charge of the trial court there, that "There is no rule that can be laid down to you by me or anyone else by which you can fix the compensation for pain and suffering at so much per day or per week." An excellent expression of the fundamental doctrine to which we adhere is found in *Braddock v. Seaboard Air Line Railroad Company,* 80 *So. 2d* 662 (*Fla. Sup. Ct.* 1955):

"Jurors know the nature of pain, embarrassment and inconvenience, and they also know the nature of money. Their problem of equating the two to afford reasonable and just compensation calls for a high order of human judgment, and the law has provided no better yardstick for their guidance than their enlightened conscience. Their problem is not one of mathematical calculation but involves an exercise of their sound judgment of what is fair and right." At *page* 668.

It may be said, and not without justification, that our conclusion conflicts to some degree with *Rhodehouse v. Director General,* 95 *N. J. L.* 355 (*Sup. Ct.* 1920); *Balog v. F. M. Mitchell Motor Co.,* 3 *N. J. Misc.* 1000 (*Sup. Ct.* 1925), and *Lukasiewicz v. Haddad,* 24 *N. J. Super.* 399 (*App. Div.* 1953), which hold that it is not improper for counsel to advise the jury as to the amount of the *ad damnum* clause of the complaint; also with *Kulodzej v. Lehigh Valley Railroad Co.,* 39 *N. J. Super.* 268 (*App. Div.* 1956), sanc-

tioning a statement to the jury in summation of counsel's opinion as to the sum which should be awarded to the plaintiff; and with *Budden v. Goldstein, supra,* 43 *N. J. Super.* at *page* 344, approving reference to suggested amounts as reasonable compensation. In order that the rule announced in the present case may be invested with its full and intended scope, those decisions are expressly overruled. Moreover, it is declared to be improper to send the complaint to the jury as a matter of course, since it contains the damages demanded. But our holding is not intended to interfere with use of the pleadings for other proper trial or evidentiary purposes.

Informing the jury of the *ad damnum* clause serves no useful or sound function. If it be said that the amount claimed constitutes the maximum limit of permissible recovery, the legal effect of that limitation is better left in the control of an experienced trial court. In the hands of the jury, untrained in the trial of cases, it may very well raise confusing and difficult complications. It is a matter of common knowledge that ordinarily the amount of damages laid in the complaint is much in excess of any sum which the plaintiff hopes to receive. Witness the large number of actions which are being transferred regularly from our Superior and County Courts to the District Courts.

We know that as a matter of practice when the *ad damnum* clause is brought to the attention of the jury, the court admonishes them that it only represents the claim of the plaintiff and that their award must be based on reasonable compensation. But it is extremely doubtful whether such admonitions are sufficient to eliminate the figure from their minds as a conscious or unconscious factor in reaching their verdict. *Hollinger v. York Rys. Co., supra.* And as the Supreme Court of Missouri declared in *Bales v. Kansas City Public Service Co.,* 328 *Mo.* 171, 40 *S. W.* 2d 665, 670 (1931),

"However, we are unable to see wherein it serves any good or useful purpose to inform the jury, in instructing them upon the measure of damages, that they cannot allow or assess the damages

in excess of the amount sued for, and named in the instruction. We believe that the practice of giving such forms of instruction should be discontinued by the trial courts." 40 *S. W.* 2*d* at *page* 670.

And see *Otto v. Milwaukee Northern Ry. Co.*, 148 *Wis.* 54, 134 *N. W.* 157, 160 (*Sup. Ct.* 1912).

For the reasons stated, the judgment of the Appellate Division is affirmed, except as modified. Costs to plaintiff.

Mr. Justice JACOBS votes to affirm for the reasons expressed in the opinion of Judge Conford in the Court below, 42 *N. J. Super.* 95.

HEHER, J. (dissenting in part). I would reverse the judgment as to both defendants, to the end that there be a new trial of the entire issue; but I join in the opinion of Mr. Justice Francis on the question of introducing to the jury, in summation, a mathematical formula for the admeasurement of damages for pain and suffering.

WACHENFELD, J. (dissenting in part). I am generally in accord with the majority opinion but cannot subscribe to that portion which is contrary to and specifically over-rules *Budden v. Goldstein*, 43 *N. J. Super.* 340 (*App. Div.* 1957); *Kulodzej v. Lehigh Valley R. Co.*, 39 *N. J. Super.* 268 (*App. Div.* 1956); *Lukasiewicz v. Haddad*, 24 *N. J. Super.* 399 (*App. Div.* 1953); *Balog v. F. M. Mitchell Motor Co.*, 3 *N. J. Misc.* 1000 (*Sup. Ct.* 1925); and *Rhodehouse v. Director General*, 95 *N. J. L.* 355 (*Sup. Ct.* 1920).

The practices approved in these adjudications have prevailed for years and have resulted in no inequities or difficulties warranting our interference with them. I would abide by the rules enunciated in the cases cited above.

*For affirmance and modification*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS and PROCTOR—5.

*For reversal*—Justice HEHER—1.

*Dissenting in part*—Justice WACHENFELD—1.